# EXHIBIT D

Ameriprise Financial Services, LLC 70100 Ameriprise Financial Center Minneapolis, MN 55474

# *Ameriprise*® **Custom Advisory Relationship SPS Advisor Application**
## - IRA Account



Account Number

████████      **133**

## *Ameriprise*® Custom Advisory Relationship Selection

| | |
|---|---|
| Client(s) included in *Ameriprise*® Custom Advisory Relationship | SUSANNE  MEHLMAN |
| *Ameriprise*® Custom Advisory Relationship  ID | ████████ |
| Discussion /Signed  State | Maryland |

## Ownership and Program Details

| | |
|---|---|
| Program Name | SPS Advisor |
| Ownership | INHERITED IRA - INDIVIDUAL |
| Taxpayer | SUSANNE MEHLMAN  / ████ / ████ 0239 |
| AIF signing on behalf of client | No |
| Client an Ameriprise Employee? | No |
| Covered family member | No |
| Servicing Advisor | David Janny / ████ |
| Recommending Advisor | David Janny / ████ |
| Compensation sharing arrangement | No |
| Primary reason(s) to establish this advisory account under the Regulation Best Interest Care Obligation | Client desires ongoing investment advice and account monitoring |

## Trusted Contact Person

Regulations require us to ask clients if they choose to identify a Trusted Contact Person. This person will not have any access to account information. Ameriprise may contact this person to check on the client's welfare. To provide a Trusted Contact Person, please contact your advisor.

### SUSANNE  MEHLMAN's Trusted Contact Person

| | |
|---|---|
| Client Name: | SUSANNE  MEHLMAN |
| Trusted Contact Person: | Not on File |

## Ownership Details

| | |
|---|---|
| Account communication address | ████████████ |
| Name of deceased | Bernard Sherlip |
| IRA Plan | New |

### Beneficiary Designation

| | |
|---|---|
| Beneficiary Designation | Submit a beneficiary change to apply your desired designation. |

## Account Profile

© 2018 - 2022  Ameriprise Financial, Inc.
All rights reserved.

| | |
|---|---|
| **Initial Investment Amount** | ▮▮▮▮▮▮ |
| **Source of funds** | Inheritance |
| | Internal Transfer |
| **Investment time-frame** | D. 8 - 10 Years |
| **Risk tolerance** | D. Moderate/Aggressive |
| **First investment objective** | I. Growth |
| **Liquidity needs** | B. 1 - 6 Years |
| **Target asset allocation model time frame** | E. 8 - 15 Years |

## Account Preferences

| | |
|---|---|
| **Proxy Voting Election** | You elect to retain the obligation to vote proxies. All proxy solicitations and related materials should be sent to the client directly. |
| **Trade Confirmation Suppression** | You elect not to receive trade confirmations |
| **Money Settlement** | Ameriprise Bank Insured Sweep Account (ABISA) |
| **Equity Dividend Option** | Cash (Sweep to Money Settlement Option) |

## Fees

| | |
|---|---|
| **Asset-based Fee Billing Frequency** | Monthly |
| **Anticipated Advisory Accounts Assets Under Management** | ▮▮▮▮▮▮▮▮▮ |
| **Annual Advisory Fee Rate agreed to in Custom Advisory Relationship** | 1.00 % |
| **Total Annual Asset-based Fee Rate for this account** | 1.00 % |
|   Annual Advisory Fee Rate | 1.00% |
| **Consolidated Advisory Fee Service** | No |

## Account Features

| | | |
|---|---|---|
| **Option Trading** | Requested | |
| | Experience/Request | |
| | **Options experience years/trades/size** | 6/ 10/2 |
| | **Equities (includes ETFs) experience years/trades/size** | 15/10/200 |
| | **Previous options experience** | Covered Call Writing |
| | **Strategy request** | Covered Call Writing |
| **Structured Notes** | Not Requested | |
| **Structured CDs** | Not Requested | |
| **Mortgage Backed Securities** | Not Requested | |
| **High Yield Corporate Bonds** | Not Requested | |
| **Trade Restrictions** | Not Requested | |
| **Forego Client Direct Orders** | Declined | |
| **Master Limited Partnership** | Not Requested | |

## Acknowledgements

**Acknowledgements last updated: March, 2023**

Read these acknowledgements carefully and then sign and date this section. "You" and "your" refer to you the applicant. "I", "we" and "us" refer to

Ameriprise Financial Services, LLC ("AFS" or "Sponsor"), American Enterprise Investment Services Inc. ("AEIS"), and/or Ameriprise Trust Company (ATC) which are subsidiaries of Ameriprise Financial, Inc. ("AFI")."Ameriprise Financial" refers to Ameriprise Financial, Inc. and its affiliates.

You acknowledge and agree that: a) the information you provided to us on this application is correct, b) an Ameriprise financial advisor has reviewed this service with you, c) you authorize all activity indicated within this application, d) we may deliver the documents related to the account(s) you intend to open to you in person, by mail, by email, or electronically through the secure site on ameriprise.com.You agree that we may also refer you to the applicable documents via the Ameriprise website, ameriprise.com/disclosures, that these references may be provided to you or a member of your household via email or via your consolidated financial statement, you consent to an electronic delivery process directing you to one or more disclosure webpages on the Ameriprise website, and you acknowledge that you have access to a computer that can access the applicable documents via email, or on the Ameriprise website when notice of their availability is provided to you.You understand that you may obtain paper copies of any of these documents at any time by contacting your financial advisor or by calling Ameriprise Financial at 800.862.7919, and **e) you have read, understand and agree to each acknowledgement and all the terms and conditions stated in this application and in the related documents provided to you.**

### General Acknowledgements

You affirm that you are at least 18 years of age and of full legal age in your state of residence.

**Business Continuity:** You acknowledge that you have received information about the Ameriprise Financial Business Continuity Plan.

**High Concentration:** You understand that a high concentration of any one position in your account(s) could increase investment risk.

**Tax Advice:** You understand and acknowledge that neither AFS nor your financial advisor provides tax advice and you must consult your tax professional or attorney regarding tax issues specific to your circumstances.

**Own Account:** You acknowledge that you are purchasing investments for your own AFS account(s) ("Account"), and not with a view to the distribution, assignment, transfer or other disposition of the investments.

**Identity Information:** You understand that AFS is required by law to obtain certain personal information from you which we will use to verify your identity and include in any reports to tax or regulatory authorities as required. If you do not provide us with this information, we may not be able to open your Account. If we are unable to verify your identity, we reserve the right to close your Account and to take such other steps as we deem reasonable.

**Information Sharing:** You understand that the clearing agent, AEIS, will release your name, address and security position to requesting companies in which AEIS holds assets for your Account, unless you specify otherwise to AFS.

**Householding:** You understand that AFS and its affiliates may use and combine information concerning certain Accounts owned by you and other members of your primary household group to provide members of the group with a consolidated paper and/or electronic statements of Account(s), Account information and, for certain products and services, advantageous pricing or fees (these uses of Client Information are known as "householding"). The types of Accounts that may be included are: investment, insurance, annuity, brokerage and Advisory Accounts; this includes features linked to brokerage and Advisory Accounts. A primary household consists of an individual, his or her spouse or domestic partner, and their unmarried children under age 21 who reside at the same address. If an individual member of your household group enrolls in electronic delivery of your consolidated financial statement, we will provide notice the household has made this election and no longer send a statement by U.S. Mail. You understand that important updates to agreements and disclosures may be included in your consolidated financial statement and will be delivered electronically if a member of your household elects to have your statement delivered in that fashion. Please contact the Customer Service Department at 800.862.7919 if you prefer to receive a statement covering only Accounts that you own and not to participate in householding. You understand that you may work with your financial advisor to add additional members or ownerships to your primary household, which may help you qualify for a lower asset-based fee. If you want to have a statement covering only Accounts that you own and not participate in household pricing, you can call your Ameriprise financial advisor or the service number on your statement. For purposes of shareholder documents such as prospectuses, supplements, annual reports, semiannual reports and proxies, householding will be defined as two or more shareholders who share the same address and either share the same last name or have indicated that they are married or domestic partners. This remains in effect unless notified otherwise. You understand that if you wish to continue receiving multiple copies of prospectuses, supplements, annual reports, semiannual reports and proxies, you can call 866.273.7429 and reference the client number found on your statement. Multiple mailings will resume within thirty (30) days of the request.

**Financial Interest in Products:** AFS has a financial interest in the sales of affiliated products manufactured by its affiliates. AFS and its affiliates receive more revenue, in aggregate, from the sale of affiliated investment products and services sold under the Ameriprise, Columbia Threadneedle Investments and RiverSource brands, than for the sale of unaffiliated investment products and services. We generally also receive more revenue for securities or products sold in a fee-based advisory account than for those sold in a commission-based brokerage account. Higher revenue generally results in greater profitability for the firm and its affiliates. Employee compensation (including management and field leader compensation) and operating goals at all levels of the company are tied to the company's success. Management, sales leaders and other employees generally spend more of their time and resources promoting Ameriprise, Columbia Threadneedle Investments and RiverSource products and services. These interests may change over time.

**You understand that investment products are not federally or FDIC insured, are not deposits or obligations of, or guaranteed by, any financial institution, and involve investment risks including possible loss of principal and fluctuation in value.**

### Account Detail Acknowledgements

**Authorized Person Signature:** If you are signing as an authorized person (e.g., attorney in fact, trustee, guardian, or conservator) for the client(s) listed below, you are duly authorized to establish an Ameriprise Custom Advisory Relationship ("Relationship"), to open Account(s), and to conduct

transactions in the Account(s) on behalf of the client(s).

**Entity Signature:** If you are signing on behalf of an entity, you are duly authorized to establish a Relationship, to open Account(s), and to conduct transactions in the Account(s) on behalf of that entity.

## Standard Option Agreement

By signing this agreement you acknowledge that you have received from us and have read or will read the Options Clearing Corporation Disclosure Document entitled "Characteristics and Risks of Standardized Options" prior to engaging in any option trading. You further agree that you will read all revisions to the "Characteristics and Risks of Standardized Options" document as they become available. You can always access "The Options Clearing Disclosure Document" at: https://www.theocc.com/Company-Information/Documents-and-Archives/Options-Disclosure-Document.

In connection with any transaction executed on your behalf for the purchase and sale of put and call options, you agree as follows:

1. All transactions shall be subject to the constitution, rules, regulations, customs, and usages of the applicable Exchange or market and its clearing house, if any, where executed. You further agree that you will not, either alone or in concert with others, violate the position or exercise limits which the Exchange or market where executed may establish from time to time. As set forth in "Characteristics and Risks of Standardized Options," you acknowledge that you are familiar with the applicable state regulations and statutes governing the conduct of your investments and have satisfied yourselves that nothing therein contained will in any way limit your ability to enter into this agreement or to engage in option transactions.

2. In the case of options sold or written by you in a cash Account:
   a. With respect to a call option which if exercised against you will require the delivery of securities sold, you agree that you will keep such securities in your Account with us, or with a custodian bank acceptable to us which is authorized to issue either escrow receipts, option guarantee letters or depository receipts, until the expiration of the option period, and you agree that you will not sell or withdraw such securities. If the option is exercised, you authorize us to deliver such securities to the purchaser without previous notice to you.
   b. With respect to any put option which if exercised against you will require payment for securities purchased, you agreed that you will keep in your Account sufficient funds for such payment until the expiration of the option period, or with a bank acceptable to us which is authorized to issue put option guaranty letters and you agree that you will not withdraw such funds or utilize them for any purpose. If the option is exercised you agree that we may use such funds for the purchase of such securities without previous notice to you. You understand that any trades you make in violation of the options approval level for your Account may be closed out at any time without prior notice and you are solely responsible for any losses arising from closing out any related option or other security position which may be required as the result of an unapproved option transaction.

3. With respect to any protective put option in a qualified Account which if exercised will require you to deliver securities, you will keep such securities in your qualified Account until the expiration of the option period and will not sell such securities without first closing the protective put position. If you fail to do so, you hereby authorize us to close the protective put position(s), or if the option is exercised to first use any funds and/or sell any other securities in your qualified Account or if necessary advance funds on your behalf in order to purchase the securities needed for settlement, and in either case you will be responsible for any resulting losses. You agree that we may take these actions without providing prior notice to you, and you will hold us harmless from and against any losses, damages, penalties or costs, including penalties under ERISA and/or the Internal Revenue Code related to any prohibited transactions, that may result from the sale of securities before a related option expires or is closed.

4. Any securities and funds held by us in any non-qualified Account of yours shall be held by us as security for the performance by you of your obligations to us under this agreement.

5. As option transactions involve a high degree of risk, you understand that:
   a. You should not transact in options unless you are able to sustain a total loss of the premium and transactions costs, and the total exercise value of the underlying position, you should not write a call option unless you either own the underlying security (or a security convertible, exchangeable, or exercisable into such underlying security) or are able to sustain substantial financial losses, and that you should not write a put option unless you are able to sustain substantial financial losses.
   b. You may not be able to close a position in the event that a secondary market in the option ceases to exist or the listing exchange restricts or suspends trading in the option.

6. You have been advised of and agree to abide by applicable federal, state, exchange and other industry regulations and firm policies regarding margining of options and related transactions.

7. You agree to promptly advise us of any changes in your financial situation or investment objectives.

8. In case of your insolvency (perceived or actual), death, disability or attachment of your property, you agree that we may, with respect to any options position, take steps as we consider necessary to protect us against any loss. If a secondary market were to become unavailable, you understand we may elect to exercise or negate the exercise of valuable option contracts in your Account on our behalf. You agree that you will hold us harmless against any losses, damages, penalties or costs involved with these transactions.

9. Any agreement by you with us, whether previously or hereafter made applicable to any account of yours with us, shall also apply to such option transactions except to the extent that it conflicts with this agreement. In the event of a conflict, this agreement shall control, and where there is no conflict each provision of each agreement shall apply.

10. You understand and agree that option assignments will be allocated among position holders on an automated random selection basis.

11. Absent the written designation of an agent to transact business on your behalf (e.g., a power of attorney), you alone may make trading decisions in your Account; however, unless you give specific instructions to the contrary, you agree that we may exercise discretion in the selection of the exchange or marketplace for the execution of multiple traded options in your Account.

12. **THIS AGREEMENT AND ITS ENFORCEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF MINNESOTA WITHOUT GIVING EFFECT TO ITS CHOICE OF LAW OR CONFLICTS OF LAW PRINCIPLES; SHALL COVER INDIVIDUALLY AND COLLECTIVELY ALL ACCOUNTS WHICH THE UNDERSIGNED MAY OPEN OR REOPEN WITH US, OR WHICH MAY BE INTRODUCED TO US, INCLUDING OUR SUBSIDIARIES AND AFFILIATES, THROUGH THE COURTESY OF THE AFOREMENTIONED INTRODUCING FIRM; SHALL INURE TO THE BENEFIT OF OUR AFFILIATES AND OUR SUCCESSORS, AND THOSE OF THE AFOREMENTIONED INTRODUCING FIRM, WHETHER BY MERGER, CONSOLIDATION OR OTHERWISE, AND ASSIGNS, AND THEIR RESPECTIVE EMPLOYEES AND AGENTS; WE MAY TRANSFER THE ACCOUNTS OF THE UNDERSIGNED TO OUR SUCCESSORS AND ASSIGNS**

DOC0506CARN900128

AND THOSE OF THE AFOREMENTIONED INTRODUCING FIRM; AND THIS AGREEMENT SHALL BE BINDING UPON THE HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF THE UNDERSIGNED.

Clients requesting approval for short puts and uncovered calls must read the following terms:

**Special Statements for Uncovered Option Writers**
There are special risks associated with uncovered option writing which expose the investor to potential significant loss. Therefore, this type of strategy may not be suitable for all customers approved for options transactions.

1. The potential loss of uncovered call writing is unlimited. The writer of an uncovered call is in an extremely risky position and may incur large losses if the value of the underlying instrument increases above the exercise price.
2. As with writing uncovered calls the risk of writing uncovered put options is substantial. The writer of an uncovered put option bears the risk of loss if the value of the underlying instrument declines below the exercise price. Such losses could be substantial if there is a significant decline in the value of the underlying instrument.
3. Uncovered option writing is thus suitable only for the knowledgeable investor, who understands the risks, has the financial capacity and willingness to incur potentially substantial losses and has sufficient liquid assets to meet applicable margin requirements. In this regard, if the value of the underlying instrument moves against an uncovered writer's options position, the investor's broker may request significant additional margin payments. If an investor does not make such margin payments, the broker may liquidate stock or options positions in the investor's Account, with little or no prior notice in accordance with the investor's margin agreement.
4. For combination writing, where the investor writes both a put and a call on the same underlying instrument, the potential risk is unlimited.
5. If a secondary market in options were to become unavailable, investors could not engage in closing transactions, and an option writer would remain obligated until expiration or assignment.
6. The writer of an American-style option is subject to being assigned an exercise at any time after he or she has written the option until the option expires. By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period.

Our approval of your request to write uncovered options in your Account, and your writing of uncovered options in your Account, constitutes your acknowledgement and acceptance of the risks noted above.

Brokerage, investment and financial advisory services are made available through Ameriprise Financial Services, LLC, Member FINRA and SIPC. Clearing, custody and settlement services are made available by American Enterprise Investment Services Inc., Member FINRA and SIPC.

By signing this document, you agree to electronic delivery of the Ameriprise Financial Client Relationship Summary at ameriprise.com/bestinterest and acknowledge you have accessed and read this document. You acknowledge that you have access to a computer that can access the Client Relationship Summary and other important documents on the Ameriprise website. If you'd like a physical copy, you may request one from your financial advisor or by calling us at 800.862.7919.

## Important Documents to review prior to signature

The following document(s) must be given to the client(s) in order for you to be in compliance with product rules:

**Give to Client Forms**

Not Applicable

**Additional Documents**

- 8340                     -   Option Account Approval
- 113585                   -   SPS ADVISOR DISCRETION FORM

## Signatures

☑ Check this box to attest that the client(s) was consulted prior to establishing the account(s) reference above.

**SUSANNE MEHLMAN** / Taxpayer

Date (MMDDYYYY)

X ─── SUSANNE MEHLMAN 2023-04-18 11:44:53 GMT ───

DOC0606CARN900128

**DAVID   JANNY** / Servicing Advisor

| X | DAVID JANNY 2023-04-17 21:53:06 GMT |

Date (MMDDYYYY)