# EXHIBIT Q

Provide this form to the client. Do NOT send it to the Corporate Office.

CASE 0:24-cv-03018-JRT-DLM   Doc. 72-17   Filed 12/20/24   Page 2 of 14

# Ameriprise® Select Separate Account Client Agreement



## 1. Overview of Select Separate Account

Ameriprise Financial Services, Inc. sponsors a wrap fee program offering several types of managed accounts ("Managed Accounts") of which Ameriprise Financial Services, Inc. ("Ameriprise Financial" or "Sponsor") is the Sponsor. Sponsor is an investment adviser that is compensated for organizing and administering the Ameriprise Managed Accounts Program, and for selecting or providing advice to clients regarding the selection of other investment advisers in the program. You will pay an asset-based fee ("Wrap Fee" or "Asset-based Fee") for investment advisory services, the execution of transactions in addition to other applicable fees and expenses. The Ameriprise Select Separate Account ("Select Separate Account" or the "Service") is offered through the Managed Accounts Client Disclosure Brochure ("Disclosure Brochure") or Managed Accounts and Financial Planning Service Disclosure Brochure ("Combined Disclosure Brochure"), as applicable. The Service is a discretionary separately managed account service that enables you to own a portfolio of individual securities, exchange traded funds ("ETFs"), and in some circumstances, mutual funds managed by a professional Investment Manager (defined below), which, effective September 2019, includes Sponsor for Select ETF Portfolios, in accordance with an investment strategy or a combination of complementary strategies. Select ETF Portfolios includes both affiliated and unaffiliated ETFs. Select Separate Account also offers a series of portfolios consisting of separately managed accounts, mutual funds and exchange traded funds in a single account ("Select Strategist UMA").

This Ameriprise Select Separate Account Client Agreement ("Agreement") is part of the Select Separate Account Application ("Application"). The applicable Disclosure Brochure, and Application are collectively referred to as the related documents ("Related Documents") and supplement this Agreement. The Related Documents and this Agreement form the contract governing your investment advisory account(s) with Ameriprise Financial. The *Ameriprise Brokerage Client Agreement*, the Other Important Brokerage Disclosures Document and the Schedule of Account & Service Fees are collectively referred to as the "Brokerage Agreement" and set forth the terms under which brokerage services are provided to you as part of your Agreement.

This Agreement is made between Sponsor and each of the client(s) ("Client") who sign the Application. If any of the terms of this Agreement conflict with the terms of the Related Documents, as amended, this Agreement will control. If there is any conflict in the description of the investment advisory service between this Agreement or the Application and the applicable Disclosure Brochure, the applicable Disclosure Brochure will control. When used in this Agreement, the terms "you", "your" and "yours" refer to each of the client(s) named below and the term "Account" refers to each of your Select Separate Accounts.

Certain ineligible securities, as further discussed in the Disclosure Brochure or Combined Disclosure Brochure, as applicable, may be transferred to an Ameriprise Financial Brokerage Account and the Brokerage Agreement will govern such assets. You understand and agree that for all transfers to an Ameriprise Financial Brokerage Account, if you do not have a brokerage account with the same account registration, beneficiaries, and other account level attributes as your Select Separate Account, a new Ameriprise Financial Brokerage Account will be opened with the same attributes.

Sponsor also offers a consolidated advisory fee service for which you will receive Ameriprise Financial Planning Service ("AFPS") and at least one Managed Account Service. This consolidated advisory fee service is offered through the Combined Disclosure Brochure. If you elect this option with a Managed Account, you will receive material elements of the financial planning process and the Select Separate Account.

## 2. Appropriateness of Select Separate Account

The Service is available to individual investors, corporate entities and tax-qualified accounts, excluding TSCAs. Sponsor, in its own discretion, may offer certain account types to certain clients. Before selecting, you should consider, among other things, the costs and potential benefits of an Account, your investment objectives, and the types of investments you hold and intend to purchase. Sponsor will determine whether an Account is suitable upon account opening and thereafter.

The cost you pay for an Account may be more or less than if you were to purchase the investment advisory services and the investment products separately. If you elect to engage in a consolidated advisory fee relationship, the cost that you pay for the combined service may be more or less than if you purchased AFPS separately. The costs and expenses associated with an investment product, among other things, should be considered when deciding whether an Account is appropriate for you. Carefully read the terms of this Agreement, as well as the Application and the Disclosure Brochure or Combined Disclosure Brochure, as applicable, for more information regarding Account fees and expenses, and the consolidated advisory fee.

The Wrap Fees you pay will reduce the overall value of your Account(s). In addition to the Wrap Fee, there may be underlying expenses associated with the investments held in your Account(s).

## 3. Select Separate Account and Other Relationship Services

**A. Select Separate Account Services:** Sponsor will provide you with investment advisory services through

one or more of its financial advisor(s) ("financial advisor"). Your finanical advisor will (i) assist you in defining your financial and risk profile information ("Client Information") and any investment objectives that will help form the basis for the management of your Account(s); (ii) assist you in your Account(s) selections; (iii) at least annually, consult with you to determine whether there have been any changes in your Client Information, investment objectives, and any reasonable stock and/or inventory restrictions ("Reasonable Restrictions") that you may have placed on the management of your Account(s); and (iv) at least annually, analyze and assess your Account(s), including, among other things, the performance of the investments in your Account(s). You understand that certain duties of Sponsor are carried out through its employees and agents, including your financial advisor, and that your financial advisor will serve as a liaison for you in connection with your participation in the Service.

**B. Services Provided by Advisory Service Providers:** Sponsor uses the services of affiliated and third-party investment advisory firms to provide discretionary and non-discretionary advisory services that include investment management, asset allocation and/or rebalancing, or providing investment models, as applicable (collectively, "Advisory Service Providers"). You shall initially select the investment manager ("Investment Manager") or model provider ("Model Provider"), who are the types of Advisory Service Providers, by completing and signing the Application.

Depending on the strategy you select, you will either appoint the Advisory Service Provider as a:

**i) Investment Manager.** By signing the Application you appoint and authorize the Investment Manager to: 1) have full and complete discretion to direct and manage the investment and reinvestment of the securities and other assets held in the Account(s); and 2) have full power and authority to act on behalf of the Account(s) with respect to purchases, sales and other transactions in any and all securities and instruments except for certain types of collective investment vehicles that have their own underlying expense structures; cash equivalent securities or instruments such as money market securities, certificates of deposit, time deposits and banker's acceptances or repurchase agreements. The Investment Manager may be Ameriprise Financial, an affiliate of Ameriprise Financial, or a non-affiliated Investment Manager.

When you select an Investment Manager, you become the Investment Manager's direct investment management client. Ameriprise Financial will provide the Investment Manager with your Client Information and other information included in your Application. Investment Manager will promptly notify Ameriprise Finanical if it determines to reject your Account upon receipt of this information.

The Investment Manager may, with notice and consent by Sponsor, delegate any or all of its rights, duties and obligations under its Master Advisory Agreement to one or more affiliated Advisory Service Provider from time to time; however, the Investment Manager will be responsible for overseeing subadvisers' or third parties' performance, the Investment Manager will not be relieved of its duties and obligations under the Master Advisory Agreement, and the Investment Manager will be responsible for the Advisory Service Provider's acts and omissions as if such acts and omissions were its own.

When Ameriprise Financial acts as Investment Manager to Select ETF Portfolios, we use either a Portfolio Strategist to provide asset allocation and investment recommendations or an Asset Allocation Strategist to provide solely asset allocation recommendations. Neither Portfolio Strategists or Asset Allocation Strategists have discretionary authority or control to purchase or sell securities or make other investments for individual Accounts. Ameriprise Financial is responsible for the oversight of Portfolio Strategists and Asset Allocation Strategists.

**ii) Model Provider.** By signing the Application, you appoint and authorize the Model Provider to act as investment adviser and, in that capacity, make investment selection decisions for the model portfolio strategy, which Sponsor implements, subject to any Reasonable Restrictions or other instructions provided by you. A Model Provider does not have any brokerage discretion or authority to place orders to purchase or sell securities in your Account. You grant Sponsor authority to exercise investment discretion for Managed Accounts utilizing Model Providers and to implement securities transactions in your Account(s) in accordance with the model portfolio provided by the Model Provider.

An Investment Manager may transition from a discretionary manager to a Model Provider within the Service. In the event of this transition, the Investment Manager will no longer provide direct investment management services over the assets in your Account(s) as described in Section 3.B.(i) but will serve as a Model Provider as described in this Section.

Generally, the Master Advisory Agreement ("Master Advisory Agreement") between the Investment Manager and Sponsor will govern the provision of these investment management services. As a discretionary investment advisory service, client-directed trading is not permitted in your Account.

**C. Financial Planning Services:** In addition, if you elect to engage in a consolidated advisory fee relationship, your financial advisor will address your goals and needs through AFPS. Your financial advisor's initial analysis will include a basic review of your fundamentals, including your net worth and current cash flow, protection needs and basic estate planning needs. The initial recommendations may address only the areas that you have identified as your most immediate needs and priorities. Your financial advisor is not obligated to make any recommendations or give any financial advice to you that, in the sole judgment of the financial advisor, would be impracticable, unsuitable, unattainable or undesirable. As part of your financial advisor's basic review of your fundamentals, you may receive, without charge, a life insurance analysis. Your financial advisor will receive no compensation for the life insurance analysis but may receive compensation for insurance products you actually purchase. More information about AFPS is described in the Combined Disclosure Brochure.

**D. Brokerage Services Provided by Sponsor and/or its Affiliates:** Sponsor, through its affiliate, American Enterprise Investment Services Inc. ("AEIS"), will provide you with brokerage services in connection with your Account(s), as described in Section 6 and elsewhere in this Agreement.

### 4. Information and Instructions Provided by You

**A. Client Information:** You agree to furnish Sponsor with certain written information relating to you in the Application and Client Information. You agree to inform Sponsor promptly in writing of any change in your Client Information, and/or other information in the Application. Sponsor will inform the Investment Manager, as applicable, promptly of any material change in your Client Information.

**B. Reasonable Restrictions:** You may impose Reasonable Restrictions on the management of your Account(s) by completing and signing the appropriate document.

**i) Investment Manager.** Any Reasonable Restrictions imposed on the management of your Account(s) may cause the Investment Manager to deviate from investment decisions the Investment Manager would otherwise make in managing your Account(s) and, accordingly, may negatively impact or otherwise affect performance. If an Investment Manager determines that the restrictions you wish to impose are unreasonable or otherwise prevent the Investment Manager from implementing the investment strategy, the Investment Manager may choose not to accept your Account(s). You agree to inform Sponsor promptly, in writing, of any change in your Reasonable Restrictions. Sponsor will inform Investment Manager promptly of any change in your Reasonable Restrictions. Any changes in the Reasonable Restrictions shall not be binding on the Investment Manager until they are received and accepted by the Investment Manager.

**ii) Model Provider.** Any Reasonable Restrictions imposed on the management of your Account(s) may cause Sponsor to deviate from the instructions provided by the Model Provider with respect to securities transactions in your Account(s) and, accordingly, may negatively impact or otherwise affect performance.If Sponsor determines that the restrictions you wish to impose are unreasonable or otherwise prevent Sponsor from implementing the model portfolio strategy of the Model Provider, Sponsor may choose not to accept your Account(s). You agree to inform Sponsor promptly, in writing, of any change in your Reasonable Restrictions. Any change to your Reasonable Restrictions will not be effective until they are received and accepted by Sponsor.

**C. Client Instructions:** Sponsor is authorized to follow your instructions (e.g. liquidation requests, strategy changes) regarding your Account(s), whether you provide them directly to Sponsor or through your financial advisor. Sponsor will take action with respect to the underlying securities and other assets in your Account(s) only according to instructions from you or your agent. Sponsor may reject any instructions given by you or your agent if, in Sponsor's judgment, implementing those instructions would: (i) violate any applicable federal or state law; (ii) any applicable rule or regulation of any regulatory agency or self-regulatory body; or (iii) be inconsistent with any internal policy maintained by Sponsor, as amended from time to time, relating to effecting transactions with or for customers. Sponsor will promptly notify you or your duly authorized agent, as applicable, of any decision to reject instructions from you or your agent. You will be required to establish a Money Settlement Option ("Sweep Option") for which you are eligible, as described in Section 38 of the Ameriprise Brokerage Client Agreement and in the Other Important Brokerage Disclosures document. You agree to give Sponsor prompt written notice if you believe any action taken with respect to the underlying assets in your Account is inconsistent with your or your duly authorized agent's instructions or your Client Information. Notwithstanding the foregoing, you acknowledge and agree that Investment Manager has discretionary authority over the assets in your Account in accordance with paragraph 3.B. of this Agreement.

### 5. Fees and Expenses

**A. Updated Pricing Framework:** You understand and acknowledge that (i) all Select Separate Account(s) you currently own, (ii) any Select Separate Account(s) you open in the future; and (iii) any Managed Account(s) reorganized into the Select Separate Account Program pursuant to Section 15.C in the future, are subject to an updated component-based pricing framework ("Updated Pricing Framework") in which the sub-components of the Asset-based Fee (referred to as "fee components") are separately itemized. The fee components are (i) a negotiable Advisory Fee of up to a maximum annual rate of 2.0%; (ii) a Manager Fee; and (iii) a Platform Fee of 0.17%.

The fee components will be displayed to you when you make changes to your investment strategy or open a new Select Separate Account. Based on the investment strategy and services you choose, the fee components will vary. Each possible fee component that may apply to your Select Separate Account is described below. Additional details are included in the "Fees and Compensation" section of the current Disclosure Brochure and Combined Disclosure Brochure.

- **Advisory Fee:** The Advisory Fee rate is an ongoing asset-based fee negotiated between you and your financial advisor and covers services such as asset allocation, portfolio construction, creation of model portfolios, advisory service provider due diligence and oversight, investment recommendations and selection including applicable investment product due diligence, execution of transactions, custody of securities, and tax and account reporting including trade confirmations and client statements and services provided by your financial advisor for your account. The Advisory Fee is shared with your financial advisor.

    - **Ameriprise Financial Planning Service Fee ("AFPS Fee"):** The AFPS Fee rate is negotiated between you and your financial advisor and represents the portion of your total asset-based fee that is allocated to cover your Ameriprise Financial Planning Service. If you are engaged in the

consolidated advisory fee service, the sum of the AFPS Fee and the Advisory Fee cannot exceed 2%.

- **Manager Fee:** The Manager Fee represents investment management fees charged by advisory service providers for a specific investment strategy. The Manager Fee rate is variable by Advisory Service Provider and specific investment strategy and is charged to you as a component of your Asset-based Fee. For Select Strategist UMA Accounts, the blended fee rate is calculated using the full billable value of the account, while applying a 0% manager fee rate to non-separately managed account assets (e.g. mutual funds and exchange-traded funds ("ETFs")) and the applicable Manager Fee rate as allocated to the separately managed account assets. ("Blended Fee Rate"). Manager Fee rates are subject to change.

- **Platform Fee:** The Platform Fee covers additional costs associated with the programs for services provided by Ameriprise Financial such as investment selection including investment strategy and investment product due diligence, overlay management, additional trading costs, enhanced trading tools, reporting (e.g. manager and portfolio reports), advisory training and expert support, platform management (e.g. ongoing product development and administration) and additional operational and support related functions.

The Updated Pricing Framework the Asset-based Fee will be itemized by applying the Manager Fee rate applicable to the Account, the Platform Fee rate, and the Advisory Fee including, if applicable, the AFPS Fee. Once established, the Advisory Fee will not change unless (i) you renegotiate it as described below or (ii) the total value of your advisory assets across all Managed Account Programs, falls below the minimum to support the rate available to you as described in the *"Changes in Fee Components"* section below. If you have an Advisory Fee rate that is lower than the minimum allowed based on the total value of your advisory assets as a result of the conversion to the Updated Pricing Framework, you will maintain that Advisory Fee rate until you choose to re-negotiate your Advisory Fee rate with your advisor, move to another Program, add the consolidated advisory fee service to your Account, or when we process certain ownership changes (the "Grandfathered Advisory Fee rate"). If you qualify for a Grandfathered Advisory Fee rate, Ameriprise Financial will provide separate written notice of this to you. Ask your financial advisor whether you have a Grandfathered Advisory Fee rate and consider this rate before re-negotiating your Advisory Fee or making applicable changes to your Account(s).

If you wish to include your AFPS Fee within your IRA's Asset-based Fee, you understand that you will need to specify a nonqualified account to pay the entire Asset-based Fee.

The minimum annual Asset-based Fee is $300, and will be prorated across all Managed Account(s) within a Household that are subject to the Updated Pricing Framework and any existing Active Portfolios accounts. If your Household balance in Managed Accounts is less than $10,000, your effective Asset-based Fee will be in excess of 3%. If your effective Asset-based Fee exceeds 3%, an advisory program may not be the most cost-effective investment option for you; similar products and services may be available for purchase for a lower overall fee through another investment program.

You can renegotiate your Advisory Fee with your financial advisor. If your Advisory Fee is renegotiated, your financial advisor will complete the appropriate documents reflecting the new Advisory Fee and you will be required to sign the document if the fee increases. Your financial advisor or Sponsor may reduce or reallocate (in the case of consolidated advisory fee accounts) your existing Advisory Fee. The Advisory Fee change will become effective at the start of the next billing period, following the period in which the written documentation is received and accepted by Sponsor. Sponsor will notify you of the change. The new Advisory Fee will be reflected as a component of your Asset-based Fee.

**Changes in Fee Components:** You understand and agree that your fee components are subject to change in the circumstances set forth below, and that we will provide 30 days prior notice of any such changes to you, except in certain instances where a fee component decreases.

The Advisory Fee is subject to a minimum rate based on the total value of Managed Account assets held within a Household at Ameriprise Financial. If a withdrawal or decrease in value causes your Advisory Fee to be below the level of advisory assets required for that minimum fee rate, Ameriprise Financial Services will notify you that it will increase the Advisory Fee to the appropriate minimum fee rate for your new level of assets (a "Passive Advisory Fee Change") unless you take action as set forth in the notification within any applicable grace period. You understand and acknowledge that if you do not take any action within the grace period, Ameriprise Financial will raise your Advisory Fee to the minimum Advisory Fee rate appropriate for your level of assets and provide confirmation of the new Advisory Fee rate to you. If this increase would increase the sum of the Advisory Fee rate and the AFPS rate above 2%, we will reduce your AFPS Fee rate until the sum of the Advisory Fee rate and the AFPS Fee rate totals 2%.

Manager Fee rates are subject to change. The Manager Fee may change if (i) your Account changes Advisory Service Providers, (ii) you make changes to your investment strategy, or (iii) one of your current Advisory Service Providers change their fee. Any increase or decrease in the Manager Fee is passed along to you. For Select Strategist UMA Accounts, the Blended Fee Rate will generally change as the allocation between the underlying separately-managed accounts changes. Changes to the Manager Fee, including the Blended Fee Rate do not require your signature.

Platform Fee rates are subject to change. The Platform Fee may increase or decrease. Platform Fee rate changes do not require your signature.

**Householding of assets in the Updated Pricing Framework:**
A feature of the Updated Pricing Framework is that it provides householding benefits across all Managed Account Programs and Managed Accounts. By default, a primary household will consist of a client, their spouse or domestic partner, unmarried children under the age of 21, and the Accounts owned by these people, which are categorized and displayed under one Group ID which will be found on your client statement. If you have more than one Group ID, you may be able to link the Group ID associated with your primary household group with the Group ID associated with an additional household group with which you have an eligible affiliation, such as the grantor of an irrevocable trust or owner of a corporation. Where eligible, this allows you to combine Managed Account assets across multiple household groups, which may help you qualify for a lower minimum Advisory Fee rate or, if applicable, to qualify for a single $300 household minimum across all Accounts in the linked households. Pension and group retirement plans are not eligible for Advisory Fee Householding. In addition to your client statement, you can also find your Group ID online if you're registered on the secure site at ameriprise.com. Contact your financial advisor to review whether your Group IDs are eligible to be linked for Advisory Fee householding benefits.

**Wrap Fees Associated with Additions and Withdrawals within the Updated Pricing Framework:** If you make a net deposit of additional assets into your Account in excess of $10,000 in a single day during a billing period, you will pay an additional Asset-based Fee on the market value of the additional assets, prorated for the number of days including the date of the deposit, remaining in the billing period. The additional Wrap Fee will be due on the date you deposit the additional assets into your Account. Sponsor will not make pro rata adjustments to or refund prepaid Wrap Fees for partial withdrawals of less than $10,000 from your Account during any Wrap Fee period. If you make a net withdrawal of $10,000 or more in a single day during a billing period, you will receive a pro-rata adjustment or refund of any prepaid Wrap Fee.

You may make partial withdrawals from your Account(s). Partial withdrawals may not reduce your Account value below the Investment Manager's strategy minimum. Minimum withdrawal amounts may apply to your Account and are available from your financial advisor. With respect to partial withdrawals from or termination of your Account(s), you may request that Sponsor distribute the assets in the form of cash or securities. You, either directly or through your financial advisor, may make partial withdrawal and termination requests in writing or by telephone.

In connection with any withdrawal, Sponsor reserves the right to retain amounts sufficient to complete any transactions open at the time of the withdrawal and to satisfy any amounts owed to it. In addition, reasonable processing time may be required in connection with any withdrawal request. Accounts that have partial withdrawals that cause the market value of an Account to fall below the stated minimum balance requirement may be subject to termination. Any final Asset-based Fee will apply to all terminated Accounts.

**i) Billing Cycle:** The Asset-based Fee is calculated monthly and is deducted from your Sweep Option as described in the **"Account Valuation"** subsection below.

**ii) Asset-based Fee and Other Fee Deductions:** You authorize Sponsor to instruct the custodian of your Account(s) to pay any and all fees and expenses (including the Asset-based Fee), when due, directly from the assets held in your Sweep Option upon receipt of a statement for such fees and expenses from Sponsor. You will be sent a statement, at least quarterly, indicating all amounts disbursed from the Account(s), including the amount of withdrawals for fees and expenses. You will continue to pay the Asset-based Fee in the event Sponsor is engaged in bankruptcy or similar reorganization proceedings, or received a protective decree under the Securities Investor Protection Act of 1970, and as amended. If the balance in your Sweep Option is not sufficient to pay your Asset-based Fee, you authorize Sponsor to instruct the custodian to liquidate securities and other assets held in the Account(s) to pay such fees and expenses.

Nothing in this section or any other section of this Agreement shall be construed to grant us any security interest or right of set-off as it relates to any qualified account. Any liability or indebtedness to us that relates to a qualified account can only be satisfied from property held within such qualified account except to the extent permitted by a prohibited transaction exemption. Any liability or indebtedness to us that relates to a non-qualified account cannot be satisfied from property held within a qualified account. For these purposes, the term "qualified account" shall include any account subject to the prohibited transaction rules found under Section 4975 of the Code or Section 406 of ERISA, as defined below, (e.g. IRAs and ERISA governed retirement accounts).

**iii) Account Valuation:** For purposes of computing the Asset-based Fee on an Account, Sponsor will determine the value of your Account assets, which includes cash held in your Sweep Option, in good faith to reflect their estimated fair market value. You understand and acknowledge that Sponsor may rely on a third-party pricing service to make these valuation determinations. Your initial Asset-based Fee will be deducted from each Account upon acceptance of the Account by Sponsor, and will be based on the market value of the assets in the Account on the Account opening date, adjusted proportionately to reflect the number of days remaining in the initial billing cycle. Sponsor will calculate the Asset-based Fee for each subsequent billing period based on the market value of the Account assets, which includes cash held in your Sweep Option, on the last business day of the preceding calendar month. Effective December 2019, the Asset-based Fee will continue to be calculated based on the market value of your Account assets on the last business day of the preceding calendar month, but will be deducted on the first business day after the 13th of the month. In the event a Managed Account is

terminated, Ameriprise Financial Services will prorate the Asset-based Fee based on the period of time during the billing period the Account was open and charge any final Asset-based Fee or rebate any unused portion of the Asset-based Fee, as applicable, less any applicable distribution fee described in Section 14.

**B. Other Fees and Expenses:** You understand and acknowledge that the Asset-based Fee does not include, and you will be responsible and charged separately for, commissions or transaction costs for client trade orders effected through a broker-dealer other than Sponsor's clearing agent AEIS; transaction fees relating to any foreign securities other than American Depositary Receipts ("ADR"), ADR issuance and annual depository fees; the entire public offering price, including underwriting commissions or discounts, on securities purchased from an underwriter or dealer involved in a distribution of securities; fees and expenses associated with the underlying money market instrument (if eligible) used as the Sweep Option; underlying ETF and mutual fund management fees; and other costs or charges imposed by third parties, including odd-lot differentials, transfer taxes, exchange fees, and other fees or taxes required by law including a nominal transaction fee on sales of all equity and most option positions. You also understand and acknowledge that you may also be subject to additional fees, depending on the optional products, services or features that may be available in connection with your Account(s) from time to time.

**C. Other Fees Received by Sponsor/Financial Advisor:** Sponsor receives several types of payments in connection with Select Separate Accounts, in addition to the Asset-based Fee. You understand that certain investment products available through or in connection with Select Separate Accounts are affiliated with Sponsor ("Affiliated Products") and that Sponsor and its affiliated companies receive fees for providing services to the Affiliated Products, including acting as investment adviser and administrator to affiliated mutual funds. You further authorize Sponsor or its affiliates to invest, directly or indirectly, in deposits of itself or its affiliates, including Ameriprise Bank, FSB, that bear a reasonable rate of interest, determined solely by Sponsor, to facilitate sweep option services, and understand that Sponsor's affiliate, AEIS, is reimbursed for expenses it incurs related to the Sweep Program.

Sponsor's affiliate, AEIS, receives payments for marketing and distribution support when you purchase shares of mutual funds that participate in our program as either Full Participation or Distribution Support firms. To participate in our program, mutual fund families agree to pay AEIS a portion of the revenue generated from the sale and/or management of mutual fund shares. Full Participation firms pay at a higher rate than do other firms. AEIS receives payments when you purchase products for which we, or our affiliates, have similar financial arrangements, such as annuity products, insurance products, unit investment trusts, structured CDs and notes, and alternative investments (such as non-traded real estate investment trusts ("REITs"), non-traded business development companies ("BDCs"), hedge fund offerings, and managed futures funds). In addition, AEIS receives sub-transfer agency or networking payments from mutual funds for recordkeeping and other servicing and account maintenance services it provides to the mutual funds.

The sources and amounts of mutual fund payments, as well as descriptions of payments from other products, can be found at ameriprise.com/guide. Review the Disclosure Brochure or Combined Disclosure Brochure, as applicable, for more information about these payments, conflicts of interest and incentives.

**D. Sweep Option:** You understand and acknowledge that the Sweep Option may have its own expenses. You further understand and acknowledge that the banks that participate in the FDIC insured interest-bearing bank deposit programs offered by our affiliated clearing firm, AEIS, compensate AEIS for deposits placed at the bank(s) or reimburse AEIS for expenses it incurs in providing the Sweep Program, and that our affiliate, Ameriprise Bank, FSB, is a participant in these programs. AEIS may receive marketing support payments from the underlying money market mutual funds, if eligible, used as the Sweep Option for your Account. The availability of the bank-deposit program or money market mutual funds as your Sweep Option depends on your Account type and ownership. Please refer to the applicable prospectus or other disclosure document(s) for further details. You understand and acknowledge that the aggregate revenue Sponsor and its affiliates receive in connection with your Account(s) may be affected by your Sweep Option and the extent to which you hold uninvested cash in your account.

**6. Brokerage, Custody and Execution Services; Dividend Distributions**
**A. Custody of Securities:** AEIS will act as custodian for the Service and will provide custody and safekeeping services for your Account(s) assets. Sponsor will not take possession of any assets, except to the extent otherwise provided by you in a written notice to Sponsor.

**B. Execution Services:** You authorize Sponsor, as introducing broker, to effect purchase and sale transactions in your Account(s) on an agency basis through AEIS. You understand that the negotiated Wrap Fee for each Account covers brokerage commissions on transactions effected on an agency basis by Sponsor through AEIS. You understand and acknowledge that your direction to Sponsor to trade through AEIS may result in less advantageous execution, including greater spreads (the difference between the bid and the offer price) and less favorable net prices, than if an unaffiliated broker-dealer were to execute the transaction.

**C. Transaction Procedures:** Sponsor will effect all securities transactions as your agent. AEIS provides execution and clearing capabilities as clearing broker for Sponsor. Sponsor and AEIS have an agreement in which Sponsor introduces customer accounts to AEIS on a fully disclosed basis. Sponsor opens, approves and monitors accounts, and accepts securities orders. AEIS provides execution, recordkeeping, and all other clearing functions

for Managed Accounts. Sponsor places all orders on a "best efforts" basis. Sponsor will not accept any liability or responsibility for orders not executed or accepted because of failure of a communication system, including the mail or other methods of transmitting instructions through vehicles of interstate commerce.

**D. Dividends/Interest Distributions:** Generally, all mutual fund dividends received will be reinvested, unless Sponsor and you agree to have such income deposited into another Ameriprise account or distributed directly to you. Equity dividends cannot be reinvested; they will be deposited into your Sweep Option. If you do not direct Sponsor to distribute the dividends to another account, the dividends will be reinvested at the direction of the Investment Manager.

**E. Margin:** Margin is not available in this Service.

### 7. Brokerage Discretion

**Investment Manager.** Pursuant to the discretionary authority granted to your Investment Manager, the Investment Manager may allocate a purchase or sale transaction to a broker-dealer other than AEIS if the Investment Manager believes that such allocation is consistent with the Investment Manager's obligation to seek best execution on the particular transaction. In making such an allocation, the Investment Manager may consider not only available prices and commission rates (including the fact that certain transactions effected by Sponsor through AEIS are included in the Asset-based Fee), but also other relevant factors such as execution capabilities, research and other services provided by the broker- dealer. You direct Sponsor to follow the instructions of the Investment Manager with respect to all transactions in your Account(s), and you acknowledge and agree that the Investment Manager may attempt to group orders among its clients where consistent with the Investment Manager's obligation to seek best execution.

**Model Provider.** Sponsor will implement securities transactions in your Account(s) as instructed by the Model Provider as described in Section 6 of this Agreement. A Model Provider has delegated its best execution obligations to Sponsor where purchases and sale transactions are made through AEIS and, in this situation, Sponsor will be responsible for fulfilling the obligations outlined in this section.

### 8. Confirmations and Reports

With respect to your Account(s), unless you direct otherwise, Sponsor will send you trade confirmations for each trade and a consolidated statement at least quarterly. You may elect to waive the right to receive trade confirmations upon the completion of each trade in your Account(s). If you make this election, Sponsor will, upon Sponsor's approval of such election, send trade confirmations only to the Investment Manager (where Investment Manager is discretionary manager over the assets in your Account(s)) and you will be able to view information regarding such trades in the consolidated statements sent to you and on Ameriprise.com. Your Asset-based Fee will not change as a result of this election and your decision to make this election is not a condition of entering into, or continuing participation in the Service. You may rescind this election at any time by providing Sponsor with a new written election.

Your Asset-based Fee will appear in the Account transaction section of the consolidated statement.

### 9. Deposits and Distributions upon Withdrawal or Termination

You may make additional investments in your Account(s) at any time in amounts of $100 or more. Sponsor will deposit all cash into your Sweep Option if received and approved by 3 p.m. Central time. The additional investments will be invested into the portfolio at the discretion of the Investment Manager or Sponsor.

In connection with any withdrawal from your Account(s), Sponsor reserves the right to retain amounts sufficient to complete any transactions open at the time of the withdrawal and to satisfy any amounts owed to it. Reasonable processing time may be required in connection with any withdrawal request. You may make partial withdrawals from your Account(s). Partial withdrawals from your Account should be in amounts not less than $5,000 and may not reduce your Account value below the Investment Manager's strategy minimum. With respect to terminations, you may request that Sponsor distribute the assets in the form of cash or securities. You, either directly or through your financial advisor, may make partial withdrawal and termination requests in writing or by telephone. You also acknowledge and agree that Sponsor may record and monitor telephone conversations for accuracy and quality assurance and may maintain and monitor any electronic communication. Sponsor will generally distribute cash within two (2) weeks following receipt of your request. For distributions of securities, Sponsor will request that the transfer agent forward the securities according to your instructions within thirty (30) days. However, the time required to complete securities transfers varies and some securities cannot be transferred. Sponsor is not responsible for any delay, damages or out of pocket costs that you may suffer during the time it takes to complete a securities transfer.

### 10. Service for Other Clients

You understand and agree that Sponsor, Investment Manager and their affiliates (i) perform advisory services for other clients and may take action with respect to any of its other clients that may differ from action taken, or from the timing or nature of action taken, with respect to your Account(s), provided their policy, to the extent practical, is to allocate investment opportunities among clients over a period of time on a fair and equitable basis; and (ii) have no obligation to purchase or sell for your Account(s) any security that they or their officers or employees may purchase or sell for their own accounts or the account of any other clients if, in their opinion, such transaction or investment appears unsuitable, impractical or undesirable for you.

## 11. Assignment

Sponsor will not assign, as defined under Section 202 of the Investment Advisers Act of 1940, as amended, ("Advisers Act"), this Agreement without your consent.

## 12. Retirement Account Considerations

The following provisions apply with respect to a retirement plan or individual retirement account subject to the prohibited transaction provisions of the Internal Revenue Code of 1986, as amended ("Code") and the Employee Retirement Income Security Act of 1974, as amended ("ERISA") including an "employee benefit plan" as defined in ERISA (e.g. a 401(k) plan) and a "plan" as defined in the Code (e.g. an IRA) (all such plans and accounts hereinafter referred to as a "Plan" and the portion of such Plan invested in a Managed Account is hereinafter referred to as your "Retirement Account").

**With Respect to Your Retirement Account:** You acknowledge and agree that you are capable of exercising control and management of the assets of the Retirement Account and are capable of making an independent and informed decision concerning the opening and maintenance of the Retirement Account(s); and you share responsibility for determining whether and to what extent your Retirement Account(s) is appropriate for you.

You represent, warrant and covenant that:

- Any securities transactions executed in your Account(s) through AEIS and the Wrap Fee you have agreed to pay Sponsor are for the exclusive purpose of providing benefits to participants and beneficiaries of your Retirement Account;

- The compensation received by Sponsor (including the portion allocated to your financial advisor), our affiliates, Advisory Service Providers and their respective affiliates is reasonable;

- You are independent of us, our affiliates, any Advisory Service Provider you appoint, and their respective affiliates (if you are employed by us, you would still generally be considered to be independent);

- You will not be permitted to open or maintain a margin account with AEIS or any other broker or dealer, or otherwise pledge or assign any assets with respect to a Retirement Account;

- Sponsor, your financial advisor, the Advisory Service Provider and their respective affiliates, are not responsible for plan administration or, except to the extent otherwise agreed to in writing by Sponsor, your financial advisor, the Advisory Service Provider or any of their respective affiliates and you, for performing any other duties that are not expressly set forth in this Agreement;

- For Retirement Accounts where Ameriprise Trust Company acts as custodian, AEIS shall act as an agent or sub custodian of Ameriprise Trust Company with respect to custody of assets;

- Sponsor, its affiliates and/or your financial advisor may rely on one or more exemptions from the prohibited transaction restrictions of ERISA and the Code with respect to transactions involving your Retirement Account. Sponsor and/or your financial advisor may provide you with certain additional information about your Retirement Account or about fees or other compensation paid to your financial advisor and may require that you acknowledge receipt of such information and agree to certain actions in order to comply with the requirements of those exemptions or applicable law. You acknowledge and agree that Sponsor may terminate this Agreement if you do not provide such acknowledgements or agreements; and

- Sponsor and/or your financial advisor are not responsible for any assets of your Plan held outside your Account. You remain responsible for ensuring appropriate diversification for all the assets in your Plan.

You further represent, warrant and covenant that if the assets credited to your Account(s) are assets of an "employee benefit plan," as defined in Section three (3) of ERISA:

- The person executing and delivering this Agreement is a "named fiduciary" as defined in ERISA, or designated as a "named fiduciary" pursuant to ERISA, who has the authority to appoint an investment manager as defined in ERISA and in the manner provided by this agreement;

- If required pursuant to ERISA or other applicable law, you agree to obtain and maintain during the period of this Agreement an appropriate bond, and to include within the coverage of such bond Sponsor, its affiliates, and each of their respective officers, directors and employees whose inclusion is required by law, and you agree to provide Sponsor with appropriate documents evidencing such coverage promptly upon request;

- The services to be provided under this Agreement, the investments and related transactions contemplated by this Agreement, and any instructions you provide regarding your Account(s), are consistent with and permissible under your plan documents, including any investment policies, guidelines or restrictions; and

- You shall promptly take action with respect to any changes to any of the Plan's investment policies, guidelines or restrictions or other plan documents pertaining to investments by the Plan, and promptly notify Sponsor, its affiliates or the Investment Manager if any investments made for your Account(s) are inconsistent with such documents. The compliance of any recommendation or investment made for your Account(s) with any such investment guidelines, policies or restrictions shall be determined on the date of the recommendation or purchase only. No investment guidelines, policies, restrictions or other instructions shall be deemed breached as a result of changes in value or status of an investment occurring after

purchase. Please see Section 4.B of this Agreement for information relating to Reasonable Restrictions.

With respect to any mutual fund of which Sponsor or an affiliate are the investment adviser, you acknowledge and agree that:

- Your financial advisor may suggest investments in such mutual fund;
- Sponsor is an affiliate to the principal underwriter of such mutual fund; and
- Sponsor and your financial advisor are subject to no limitations with respect to identifying potential investments in such mutual funds.

### 13. Amendment of Agreement/Modification of Services

Sponsor may amend or otherwise modify this Agreement, including any features of the Service, in its sole discretion, by mailing you a written notice or a new Agreement or, if you enrolled for such notice via electronic delivery, by posting such amendments or modifications online. Any such amendment or modification will be effective as of the date Sponsor establishes as outlined in the notice. Unless you terminate this Agreement pursuant to Section 14 below, your continued enrollment in the Service after such notice will indicate your acceptance of the amendments and/or modifications. This Agreement is not subject to any oral modification. Please see Section 15 of this Agreement for information (including notice requirements) relating to the termination and reappointment of Advisory Service Providers.

Additionally, if you engaged in a consolidated advisory fee relationship, this Agreement, together with (1) any future fee amendment form(s) signed by you and your financial advisor, and (2) any changes to your goals and financial planning areas on which you have requested advice as discussed between you and your financial advisor, represents the entire Agreement between you and Sponsor. Your Advisory Fee will not be increased unless you sign the appropriate documents to increase it. Your financial advisor may request a change to the allocation between AFPS and the Managed Account that make up the consolidated advisory relationship or decrease the total consolidated advisory fee. You must re-engage in a consolidated advisory fee relationship if: (1) you and your financial advisor determine to restart the initial year of the financial planning service; (2) if there is a change in owners or parties; or (3) there is a lapse of a prior Agreement.

### 14. Effective and Termination Dates of Agreement

This Agreement will take effect when it is accepted by Sponsor, and such acceptance may be evidenced by internal records maintained by us. Sponsor may refuse to accept any account at its sole discretion.

Sponsor will commence management of the Account upon the later of either the acceptance of this Agreement by Sponsor or the funding of the Account at the initial minimum investment as determined by Sponsor.

You may terminate this Agreement by contacting your financial advisor or you may call an Ameriprise Financial client service representative at 800.862.7919, enter the information requested and say "Representative" at the main menu.

This Agreement will terminate automatically when you enter into an Ameriprise® Custom Advisory Relationship Agreement ("Relationship Agreement") and the Relationship Agreement will govern all existing and future Managed Accounts opened and maintained with Ameriprise Financial that are eligible for inclusion in the Custom Advisory Relationship.

If you choose to terminate your Account, depending on the manner of distribution, you may be charged applicable fees as set out in the Brokerage Agreement.

Sponsor may, in its sole discretion and at any time, terminate this Agreement and/or discontinue or terminate the Account(s) or any of the services upon thirty (30) days prior written notice to you. At which time Sponsor may transfer the Account(s) assets to an Ameriprise Financial transaction-based brokerage account ("Brokerage Account") and the Brokerage Agreement will govern your relationship with Ameriprise Financial. You understand and agree that if you do not have an Ameriprise Financial Brokerage Account, a new brokerage account will be opened for you in the same ownership and with the same beneficiaries as your Managed Account. The Brokerage Agreement will govern your brokerage account relationship including fees charged in connection with maintaining a brokerage account, transaction fees and applicable terms and conditions such as mandatory predispute arbitration.

In the case of undeliverable/returned mail, your financial advisor will work with you to update your mailing address. If your financial advisor is unable to reach you, Sponsor will attempt to contact you by letter. At that time, Sponsor will stop actively managing your Account and temporarily stop assessing the Wrap Fee. If you provide us with a valid address within 45 days of the letter, we will remove the hold from your Account and the Wrap Fee will resume. If we do not hear from you, Sponsor will terminate the Agreement and/or Account on the date indicated in the letter, will transfer the Account assets to an Ameriprise Financial Brokerage Account and the Brokerage Agreement will govern your relationship with Ameriprise Financial.

In the event Sponsor terminates the Agreement and/or Account, it will charge any final Account fees and/or rebate Wrap Fees as described in Section 5. Immediately upon termination of this Agreement, your eligibility to receive the services (including financial planning services through a consolidated advisory fee relationship) will cease, but termination of your Agreement will not, by itself, close your Account or terminate your Brokerage Agreement. Such accounts will not be assessed a Wrap Fee, nor will you receive investment advisory services. Following termination of the Agreement and/or Account(s), each of your Accounts

will be maintained and governed by your Application and your Brokerage Agreement and any portions of this Agreement that survive such termination.

If you are engaged in a consolidated advisory fee relationship, when your AFPS is terminated, either by you or by Sponsor, you will no longer be charged a consolidated advisory fee. This will not terminate your Account(s), nor will it terminate your Wrap Fee and other costs associated with your Account(s).

In the event of your breach of any portion of Section 12, Sponsor may immediately terminate this Agreement.

### 15. Termination, Reappointment of Select Separate Account Advisory Service Providers Services, and Program Reorganizations

**A. Termination and Reappointment by You:** You may terminate the Advisory Service Provider's authority with respect to any or all of the assets in your Account(s) at any time by providing appropriate notice to Sponsor as described in Section 14. Upon receipt of such notice, Sponsor will provide the Advisory Service Provider with appropriate notice of the termination, and such termination will take effect immediately following the Advisory Service Provider's receipt of the notice. Sponsor will proceed with your request to appoint a new Advisory Service Provider as soon as is reasonably practicable after receiving any necessary documentation.

**B. Termination by Sponsor or Advisory Service Providers:** You understand and acknowledge that Sponsor may terminate the Advisory Service Provider's participation in the Service, or discontinue the Advisory Service Provider's services with respect to a particular investment strategy, by providing the Advisory Service Provider with at least thirty (30) days prior written notice. In addition, you understand and acknowledge that the Advisory Service Provider may terminate its participation in the Service, or terminate its provision of services to you, by providing Sponsor with at least thirty (30) days prior written notice.

If the Advisory Service Provider is removed, or the Advisory Service Provider's provision of services to you or with respect to an investment strategy is discontinued, a successor Advisory Service Provider providing a similar investment strategy may be identified and named by Sponsor. Under these circumstances, Sponsor will notify you of the successor Advisory Service Provider it has selected. If you choose to select an Advisory Service Provider and/or investment strategy other than the successor Advisory Service Provider, you must make a written designation by the date indicated in the notice, thirty (30) days from the notice date of the successor Advisory Service Provider. If you do not designate an alternative Advisory Service Provider or investment strategy from the options available in the Service, you understand, agree and authorize Sponsor to transfer your assets to the successor Advisory Service Provider. If a successor is not named and you fail to select a new Advisory Service Provider or investment strategy from the options available, Sponsor will transfer your Account(s) assets in-kind to a Brokerage Account over which neither Sponsor nor the terminated Advisory Service Provider has investment discretion.

**C. Program Reorganizations:**
In Sponsor's sole discretion Sponsor may reorganize any of the portfolios or investment strategies (each, an "Investment") in the *Active Portfolios*® investments, Select Separate Account, Investor Unified Account, Vista Separate Account, or Access Account (the "Manager Directed Programs") into another Manager Directed Program. Sponsor may reorganize an existing Investment into a different Manager Directed Program, in which case the services provided by the Advisory Service Provider and the particular Investment will not change as a result of the reorganization. Alternatively, Sponsor may terminate the existing Advisory Service Provider or discontinue the Advisory Service Provider's services with respect to a particular Investment and identify and name a successor Advisory Service Provider providing a similar Investment in a different Manager Directed Program. Sponsor will notify you of the planned reorganization, the new Manager Directed Program, and the successor Advisory Service Provider and Investment, as applicable. If you prefer to remain in the Manager Directed Program you have previously selected you must work with your financial advisor to select an Investment available in that Manager Directed Program or terminate your Account within thirty (30) days from the notice date of the reorganization. You may also choose to open a new Account in a different Manager Directed Program. If you do not designate an alternative Investment from the options available in your existing Manager Directed Program or transfer your assets to a new Account in a different Manager Directed Program, you understand, agree and authorize Sponsor to effect the reorganization and transfer your assets to the new Manager Directed Program.

### 16. Receipt by You of Disclosure Documents

**A. Sponsor's and Advisory Service Provider's Disclosure Brochures**: You acknowledge that you have received a copy of the Disclosure Brochure or Combined Disclosure Brochure, as applicable, and each applicable Advisory Service Provider's Form ADV Part 2A or other brochure meeting the requirements of Rule 204-3 under the Adviser's Act (each, an "Advisory Service Provider Disclosure Brochure"). Contact your financial advisor if you would like another copy of the Disclosure Brochure, Combined Disclosure Brochure or the applicable Advisory Service Provider Disclosure Brochures.

**B. Additional Disclosure Documents:** Additionally, important information with respect to many of the products and securities is contained in their respective disclosure documents, including fact sheets and prospectuses or other offering or disclosure documents (collectively referred to as the "prospectus" or "prospectuses"). Read the fact sheets carefully before participating or investing in these

products, review any prospectuses provided, and keep these disclosure documents for future reference.

### 17. Representations, Warranties and Covenants of Client

All of the information you provide in this Agreement and the Application (including the Client Information) is accurate and complete, and you will notify Sponsor promptly of any changes in the information you have previously provided. The Reasonable Restrictions (as amended) do not and will not violate any applicable state or federal law (including ERISA) or the terms of your governing documents, if applicable. You have the requisite legal capacity and authority to execute, enter into, deliver and perform any and all of your obligations under this Agreement. If this Agreement is entered into by a trustee or other fiduciary, such person represents that he/she is authorized to enter into this Agreement and that the arrangement is proper and permissible pursuant to any plan, trust and/or applicable law. If the Client is a corporation or partnership, the signatory or signatories represent that the execution of this Agreement has been duly authorized by all necessary corporate, partnership or other applicable action, and that the arrangement is proper and permissible pursuant to applicable documents and laws.

You are and will continue to be the owner of all your Account assets, and unless you enter into a separate agreement with the Sponsor (for example, to add margin trading), there are and will continue to be no restrictions on the pledge, hypothecation, transfer, sale or public distribution of such assets.

You will promptly notify Sponsor in writing if any of the representations or warranties made in this Agreement change or become untrue for any reason.

You are establishing and maintaining the Account(s) solely for the purpose of investing the assets and not with a view to obtaining information regarding portfolio holdings or investment decisions in order to effect securities transactions based upon such information or to provide such information to another party.

You authorize Sponsor and/or its affiliates to accept telephonic or electronic (including, but not limited to, email and facsimile) instructions for redemptions and surrenders from your financial advisor or your financial advisor's licensed support staff.

### 18. Acknowledgements of Client

**You understand and acknowledge that:** Investment Manager or Sponsor may be limited in its investment activities due to ownership restrictions imposed by an issuer (i.e., a legal entity that sells common stock shares to the general public) or a regulatory agency. These ownership restrictions are based upon the level of beneficial ownership in a security. For purposes of determining whether a particular ownership limit has been reached, Investment Manager or Sponsor may be required to aggregate holdings across an entire group of affiliated companies, meaning that all shares held on a discretionary basis for the account of the firm and its affiliates or for the benefit of their respective clients are taken into account for purposes of determining the maximum amount that may be held under the ownership restrictions.

Investment Manager, Sponsor and their respective affiliates are subject to these limitations. As a result, you may be limited or prevented from acquiring securities of an issuer that Sponsor may otherwise prefer to purchase in your account because Investment Manager or Sponsor has discretionary authority. It is possible that these ownership limitations could cause performance dispersion among accounts of clients who have chosen the same investment strategy. Similarly, certain accounts may hold fewer shares of a certain security than other accounts following the same investment strategy depending on when purchases of that security were restricted. In addition, purchases of certain securities may be restricted from purchase by client accounts of Investment Manager, Sponsor and their respective affiliates for risk management reasons.

Other products, services and features included in or made available through a Managed Account typically have their own fees, expenses, terms, conditions and disclosure documents. Transactions in your Account(s) and/or distributions from your account may have tax consequences to you. You are responsible for all tax liabilities arising from transactions and/or other aspects of your Account(s) and you are urged to seek the advice of qualified tax professionals. Payment of an asset-based fee may produce accounting, bookkeeping and/or income tax results different from those resulting from the payment of securities transaction commissions or other charges on a transaction-by-transaction basis. Although you may be provided with certain tax-related information from time to time, the Sponsor, your financial advisor and Advisory Service Provider do not give tax advice.

An Advisory Service Provider will not be a subadviser to Ameriprise Financial, and, except when Ameriprise Financial acts as Investment Manager for Select ETF Portfolios, neither Ameriprise Financial nor your financial advisor will be involved in, or will be responsible or liable for, investment decisions made by the Advisory Service Provider.

The discretionary investment services described in this Agreement for the Service will be provided solely by the Investment Manager. To the extent the Investment Manager directs transactions for execution with or through broker-dealers other than AEIS, you will incur additional transaction costs. The services performed pursuant to this Agreement will have no effect on assets not in your Account(s), neither the Sponsor, your financial advisor, nor the Advisory Service Provider will have responsibility for such other assets under this Agreement. The products and securities included in or made available in your Account(s) may have their own terms, conditions, and/or service agreements. In the event of a conflict between the terms of this Agreement and any other such agreement, this Agreement will control with respect to your Account(s) and such other agreement shall control with respect to the products and securities. Additionally, important information with respect to many of

the products and securities is contained in their respective disclosure documents, including strategy profiles; please read these documents carefully before participating or investing in these products and securities and keep them for future reference.

Advisory, institutional or other share classes that do not have a sales-load and do not assess 12b-1 shareholder servicing fees (collectively "Advisory Shares") are offered in all Ameriprise Managed Account Services as the primary mutual fund share class, where available to us through a selling agreement. Advisory Shares held in your Account are less expensive than most other share classes because they typically do not pay a 12b-1 shareholder servicing fee or assess a sales charge, but are not always the least expensive share class offered by a particular mutual fund. If a mutual fund begins to offer a lower-cost share class in the future, Ameriprise Financial Services may choose not to offer that share class as the applicable Advisory Share class offered in our Managed Accounts. You authorize Sponsor to convert Class A and Class C mutual funds, as well as other mutual fund share classes that pay a 12b-1 shareholder servicing fee, to an equivalent Advisory Share class. Such shares will convert to an Advisory Share class where one is available to Sponsor through a selling agreement and the mutual fund company allows the conversion to be processed on a tax-free exchange basis. This includes mutual fund shares that you transfer into your Account. Non matching shares will be sold and you will be subject to any short-term redemption fee or deferred sales charge assessed by the mutual fund company, while matching shares will convert.

Neither your financial advisor, nor Sponsor, shall have any liability for your failure to promptly inform your financial advisor of material changes in your financial and economic situation, your investment objectives, nor any restrictions you wish to propose that may affect the development of your financial plan.

### 19. Market Data

Sponsor may provide you with market data, or access to data relating to securities and securities markets. Sponsor does not guarantee the accuracy, completeness or timeliness of such information, nor does it imply any warranty of any kind regarding the market data. Sponsor assumes no responsibility for the accuracy, completeness or regulatory compliance of the representations, disclosures and other information contained in any material or information supplied to Sponsor and authorized for use by the Investment Manager or any third party prior to dissemination for use as or in marketing, including performance marketing, sales literature, contracts, forms and other documents relating to the Service.

### 20. Proxies and Corporate Actions

You have a number of options for voting proxies on securities held in your Account(s).

**A.** You have the right to vote proxies on the securities held in your Account(s) or you may delegate the authority to vote proxies on your behalf to a third party.

**B. Investment Manager.** You may delegate the authority to vote proxies to the Investment Manager. Investment Managers participating in the Program will vote all proxies solicited by or with respect to the issuers of securities in which your Account(s) assets may be invested, in accordance with the Investment Manager's proxy voting policies and procedures. Ameriprise Financial will promptly forward all your Account(s) proxy solicitations to the Investment Manager in accordance with this Section 20.

**C. Model Provider.** For Account(s) where the Advisory Service Provider serves as a Model Provider, you may delegate the authority to vote proxies to Ameriprise Financial who may further delegate those proxy voting rights to a third party proxy voting or advisory service. Ameriprise Financial or the third party will vote all proxies solicited by or with respect to the issuers of securities in which your Account(s) assets may be invested, in accordance with its proxy voting policies and procedures.

Your financial advisor does not take any action or give advice regarding the voting of proxies, nor is your financial advisor responsible for any other corporate actions relating to the investments held in your Account(s), including administrative filings such as proofs of claims related to bankruptcy or claims in class actions.

### 21. Notice

Notices shall be in writing and effective when delivered to Sponsor at : Ameriprise Financial Services, Inc., 70100 Ameriprise Financial Center, Minneapolis, MN 55474, and to you at the address set forth in the Application or a postal or electronic mail address you provide to Ameriprise Financial or our affiliates or, if you have agreed to use the electronic services provided by us, by posting such modifications or changes online. You agree that it is your obligation to promptly inform us of any change to your U.S. postal and/or electronic mail address(es) of record.

### 22. Limitation of Liability

Neither Sponsor, the Advisory Service Provider, nor any of their respective directors, officers, partners, principals, employees or agents (collectively, "Agents") shall be liable for any acts or omissions or for any loss suffered by you in connection with a Managed Account or investments and/ or products purchased, sold or held in the Accounts, unless such loss is due to their bad faith, intentional misconduct or gross negligence in regard to the performance of their respective duties under this Agreement. Each of Sponsor, the Advisory Service Provider and their Agents shall be entitled to rely, and shall be protected from liability in relying, upon any information or instructions furnished to it (or any of them as individuals) believed in good faith to be accurate and reliable.

You understand and acknowledge that neither Sponsor nor the Advisory Service Provider warrants any rate of return, market value or performance of any Managed Account assets. Sponsor shall not be responsible for any loss caused by any act or omission of any broker-dealer or the Advisory Service Provider; provided, however, that with respect to any broker-dealer selected by Sponsor, Sponsor

has acted prudently in such selection. The Investment Manager shall not be responsible for any loss caused by any act or omission of any broker-dealer; provided, however, that with respect to any broker dealer that has been selected by the Investment Manager, the Investment Manager has acted prudently in such selection. The federal securities laws and ERISA impose liabilities under certain circumstances on persons who act in good faith and, therefore, nothing herein shall constitute a waiver of any right that you may have under such laws or regulations.

### 23. Arbitration Agreement for Investment Advisory Services

Any controversy or claim arising out of the investment advisory services offered or delivered pursuant to this Agreement shall be resolved solely by arbitration on an individual basis in accordance with the Rules of the American Arbitration Association ("AAA"), and the arbitrator(s) will decide all issues related to any such controversy or claim, including whether any controversy or claim is subject to this arbitration agreement. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The parties agree that venue and personal jurisdiction for such an action upon the arbitration award is proper in Minneapolis, Minnesota. Unless otherwise agreed to by all of the parties to the arbitration (including without limitation Ameriprise Financial and you), AAA shall be the sole venue for resolving claims arising out of or relating to the investment advisory services, and all of the parties to the arbitration (including without limitation Ameriprise Financial and you) irrevocably waive trial by jury or by judge in any action, proceeding or counterclaim, whether at law or in equity.

Federal and state statutes of limitation, repose, and/or other rules, laws, or regulations impose time limits for bringing claims in federal and state court actions and proceedings. The parties agree that the time limits applicable to the arbitration will be the time limits that would be applied by the courts in the state in which the arbitration hearing will be held. However, if you do not reside in the United States, the statutes of limitation, repose, and/or other rules, laws or regulations imposing time limits applicable to the arbitration will be those that would be applied in the state where the Ameriprise Financial office servicing your account(s) is located. Any disputes related to these time limits will be determined by the arbitrator(s). This paragraph does not constitute a waiver of any right of private claim or cause of action provided by the Advisers Act.

All parties to this Agreement are giving up the right to sue each other in court, including any right to trial by jury. Arbitration of a claim under this Section 23 shall be only on an individual basis. **There shall be no right or authority for any claims to be arbitrated or litigated on a class action basis or bases involving claims brought in a purported representative capacity on behalf of the general public, clients or other persons similarly situated.** The arbitrator's authority to resolve claims is limited to claims between the parties to the arbitration (including you and Ameriprise Financial) alone, and the arbitrator's authority to make awards is limited to the parties to the arbitration (including to you and Ameriprise Financial) alone. Furthermore, claims brought by you against Ameriprise Financial, its employees or independent contractors, or by Ameriprise Financial against you, may not be joined or consolidated in arbitration or in a court action with claims brought by or against someone other than you, unless agreed to in writing by both you and Ameriprise Financial. The parties agree that this predispute arbitration provision is governed by the Federal Arbitration Act.

### 24. Anti-Money Laundering

Sponsor is required by law to obtain certain personal information from you for purposes of verifying your identity. If you do not provide Sponsor with the necessary information, Sponsor may not be able to open the Account on your behalf. In addition, to the extent the Account has already been opened for you, Sponsor reserves the right to close the Account at any time, or take such other steps as Sponsor deems reasonable, if Sponsor is unable to verify your identity.

### 25. Miscellaneous

**A. Governing Law:** Except to the extent superseded by applicable federal law or elsewhere in this Agreement, this Agreement shall be governed by the laws of the State of Minnesota without reference to its conflicts or choice of laws principles.

**B. Counterparts:** This Agreement may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall constitute one and the same Agreement.

**C. Severability:** If any term of this Agreement is found to be invalid or unenforceable, all other provisions will remain in full force and effect. Sponsor's failure to insist on strict compliance with this Agreement is not a waiver of Sponsor's rights under this Agreement.

**D. Headings:** All section and paragraph headings are for convenience of reference only and do not form part of this Agreement.

**E. Force Majeure:** No party to this Agreement will be responsible for nonperformance resulting from acts beyond their reasonable control, provided that such party uses commercially reasonable efforts to avoid or remove such causes of nonperformance, and continues performance under this Agreement with reasonable dispatch as soon as such causes are removed.